Patricia WETTSTEIN, Appellant,

v.

Gene L. LOVE, Appellee.

No. 6796.

Court of Civil Appeals of Texas, El Paso.

June 6, 1979.

Rehearing Denied July 5, 1979.

Rassman, Gunter & Boldrick, P. C., James P. Boldrick, Leslie G. McLaughlin, Midland, for appellant.

Lynch, Chappell, Allday & Aldridge, James M. Alsup, Randall Lundy, Tom C. McCall, J. Steve Stewart, Midland, for appellee.

## OPINION

OSBORN, Justice.

This case involves claims for damages arising out of a ten-year lease of premises used for a drive-in restaurant. Based upon a jury verdict, the trial Court awarded damages to the Lessee and the Lessor appeals. We affirm in part, and reverse and render in part.

In June, 1969, Lessee leased 5,610 sq. ft. of land out of Lot 14, Block 17, Dellwood Addition in Midland, Texas, for a period of ten years and agreed to pay $750.00 per month as rent. In addition, Lessee was required to pay all increases in ad valorem taxes assessed on the leased premises over and above the amount assessed for 1969. Lessor was required to submit a statement for such increase in taxes to the Lessee. The lease also contained a clause for a cost-of-living adjustment every two years based upon the Consumer Price Index as determined by the United States Department of Labor. This clause provided for an increase in July every two years based upon the Index for the preceding month as compared to the Index in June, 1969.

In late 1971, it was determined that additional taxes were due and Lessee began paying an additional $100.00 per month to cover accrued back taxes. In January, 1976, the Lessee was advised that he owed $325.45 for back taxes after having been credited for his prior payments of $3,400.00. He was also advised at that time that his monthly rent was being increased to $950.61 beginning February 1, 1976 to cover the increase in the Consumer Price Index since 1969. In March, 1976, he was actually billed $9,463.73 as the amount past due at that time by virtue of the escalation clause. The monthly rent was subsequently in-

creased to $1,359.20 as of November 1, 1977. The Lessee paid the increased amounts for rent and taxes as required while occupying the premises, but did not pay the amounts claimed to be due and owing for prior periods. In January, 1978, the Lessee abandoned the premises and moved his business to a new location.

The Lessor filed this suit claiming $325.45 due for taxes, $9,463.73 for cost-of-living increase and $15,000.00 for breach of contract, plus $2,500.00 as attorney fees. The Lessee answered and pled limitations on all claims which occurred more than four years before this suit. He also pled waiver, and estoppel on all past due and unpaid claims. He also asserted that Lessor breached the lease by permitting other sandwich shops in the shopping center in violation of his lease, and by leasing to another tenant an area used by Lessee for parking spaces in front of his business. He claimed $55,000.00 in actual damages and $35,000.00 in exemplary damages.

With regard to the Lessee's contentions, the lease provides that Lessor shall not permit the use of any other part of Lot 14, Block 17, Dellwood Addition, for owning or operating a retail sandwich shop. Lessee testified that both the Pizza Inn and a 7–11 Store located on the described premises have sold sandwiches as a part of their business operations since 1974. He estimated this cost him 1% of his business or $2,500.00 per year in gross sales since 1974. He estimated his net profit at 10% of the gross sales and this would amount to $250.00 per year or $1,000.00 for the four years in question.

Lessee also testified that when Lessor leased an adjoining tract to another restaurant, their patrons were to be entitled to use approximately ten parking spaces in front of his drive-in, and the loss of this space would cost him 50% of his net profit of $25,000.00 per year, but he acknowledged that he left the premises before the other restaurant ever opened and its effect on his business was at best very speculative.

Apparently at the request of the Appellant, and certainly without objection by him, the case was submitted to the jury upon a general charge. Special Issue No. 1 and the answers are as follows:

What sum of money, if any, exclusive of attorney's fees, do you find from a preponderance of the evidence that either party to this lawsuit is obligated to pay to the other party on account of their transactions with each other?

(a) Defendant, Gene L. Love, owes plaintiff, Patricia Wettstein, the sum of $ __0__

or

(b) Plaintiff, Patricia Wettstein, owes defendant, Gene L. Love, the sum of $ __10,000__ .

In answer to Issue No. 2 the jury found "0" for Lessor's attorney's fees. They also found on defensive issues submitted by Lessee that (3) Lessor failed to make a demand for an increase based upon the Consumer Price Index from June, 1971 to March, 1976, (4) Lessee relied upon such failure by not increasing the prices of the products he sold, (5) Lessor knew or should have known that Lessee would not increase the prices of his products in reliance upon the fact that no demand was made for an increased rental during the period from June, 1971 to March, 1976, (6) and that such reliance was to Lessee's detriment or injury.[1] They also found (7) Lessor waived the right to claim an increase from June, 1971 to March, 1976. Further, they found (8) Lessor allowed other businesses on the described premises to sell sandwiches, (9) proximately causing damage to Lessee; (10) the ten parking spaces in front of Lessee's business were included within the area covered by his lease, (11) the lease to a competing business took said parking spaces, (12) which was a proximate cause of Lessee's damages, (13)

1. As to the issues on estoppel, there was no issue on false representation or concealment of material facts. See *Echols v. Bloom*, 485 S.W.2d 798 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.); *Traylor v. Gray*, 547 S.W.2d 644 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.).

and forced Lessee to abandon the premises and (14) resulted in his loss of business profits of $7,500.00. The Lessee made a motion a motion to remit $7,500.00, and judgment was entered in his favor for $10,000.00 plus interest and costs.

■ The Appellant initially presents thirty-five points of error, all argued together although they are not all related. See Texas Appellate Practice Manual sec. 1.62 (1974). The first ten points assert that the trial Court erred in overruling Appellant's Motion for Judgment Non Obstante Veredicto. With regard to the claim that the Lessor was entitled to recover the sum sued for as a matter of law, we believe a fact issue existed as to the defense raised that the Lessor had breached the lease which gave Lessee an exclusive right to sell sandwiches in the shopping center. Such clauses are valid and binding and run with the land. *Karam v. H. E. Butt Grocery Company,* 527 S.W.2d 481 (Tex.Civ.App.— San Antonio 1975, writ ref'd n. r. e.); *Neiman-Marcus Company v. Hexter,* 412 S.W.2d 915 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.); Validity, construction, and effect of lessor's covenant against use of his other property in competition with the lessee-covenantee, 97 A.L.R.2d 4 (1964). The obvious reason for the lease provision prohibiting any other retail sandwich shop was to give Lessee an exclusive right to such sales in the area where his drive-in was located. Although the Pizza Inn and the 7–11 Store were not engaged exclusively in selling sandwiches, permitting such business would certainly affect the Lessee and was a violation of the spirit and intent of the lease clause which had as its purpose the giving of an exclusive right to sell sandwiches on the premises owned by Lessor. Lessor did not deny the sales occurred, and the evidence is undisputed that such sales had been made since 1974. Thus, Lessee established a breach of the lease agreement by the Lessor, and a valid defense to the claim of the Lessor that she should recover as a matter of law. 49 Am.Jur.2d Landlord and Tenant, sec. 179; 51C C.J.S. Landlord & Tenant § 238.

■ We also conclude that when the Lessor accepted rent payments from July, 1971 to March, 1976 and made no claim for additional rent under the cost-of-living increase as provided for in the lease, there existed a fact issue as to whether the Lessor had waived the right to enforce that clause and seek additional rent. "A waiver is basically a unilateral concept requiring action only by the party relinquishing a right. The only prerequisites for a valid waiver are (1) an intention to waive, (2) some act amounting to a surrender of a right, (3) the right relinquished must have been in existence at the time of the alleged waiver and (4) the party waiving the right must have knowledge of the existence of such right." Waiver and Estoppel, 20 Baylor L.Rev. 325, 332 (1968). Up until March, 1976, the right to collect such rent was in existence and the Lessor was charged with knowledge of the rights provided for in the lease, and during that period of time accepted the Lessee's checks for a lesser amount, endorsed them, accepted payment and made no complaint. Since the lease gave the Lessee an option to renew, the jury might have concluded that the Lessor had decided that it was preferable to leave the base rental as originally written and hope that the lease would be extended for an additional five years rather than seeking additional rent and losing a tenant, as actually occurred later on. At least a fact issue was raised, and Lessor was not entitled to recover on her claim as a matter of law. Points of Error One through Ten are overruled.

■ The next 24 points attack the Court's submission of issues 3 through 14. The Court remitted the sum found in Issue No. 14, and any error in submitting that issue has become harmless error. The Appellant requested that the case be submitted on a general charge, objected to all other issues but the first two and has no points of error complaining about the answer to issues 1 and 2, other than Point Thirty-five which will be noted later. Thus, she is bound by the general charge and the jury finding against her as to liability in Issue No. 1. The other issues become im-

material because even if the answers to issues 3 through 13 are set aside, Appellant is still faced with an adverse finding on Issue No. 1 as to the liability between these parties. Thus, regardless of our action on Points Eleven through Thirty-four, she still loses on the jury verdict as a result of the jury's answer to Special Issue No. 1. Accordingly, Points of Error Eleven through Thirty-four are overruled.

Point of Error Thirty-five asserts there is no evidence to support the finding of $10,000.00 in answer to Special Issue No. 1, and that "the evidence supports a finding of no more than $1,000.00 in damages." Damages for loss of the parking area cannot be sustained because the area Lessee claims to have lost was not in his lease and he so admitted in his own testimony. His testimony as to damages from the competing sandwich shops from 1974 to 1978 amounts to no more than $1,000.00 by his own testimony. We sustain Point of Error Thirty-five, and hold that the only proof is of damages of not more than $1,000.00.

The last Point of Error complains of the trial Court's failure to hear evidence concerning jury misconduct in its deliberations on the issue of damages. We believe our sustaining Appellant's Point of Error Thirty-five makes this issue moot. But in any event, there was no error because the Motion for New Trial alleging such misconduct did not contain supporting affidavits nor an explanation as to why such affidavits were not attached, and in the absence thereof it is within the sound discretion of the trial judge as to whether or not to hear testimony of jury misconduct. *Roy Jones Lumber Co. v. Murphy,* 139 Tex. 478, 163 S.W.2d 644 (1942); 4 McDonald, Texas Civil Practice sec. 18.13. In this case, we find no abuse of discretion. Point of Error Thirty-six is overruled.

The judgment of the trial Court is affirmed to the extent that it provides that Gene Love shall have and recover of and from Patricia Wettstein the sum of $1,000.00 plus interest thereon at the rate of 9% per annum from the date of judgment; and to the extent that it provides for sums in excess of $1,000.00 and interest, the judgment is reversed and rendered.