# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 10, 2021
Lyle W. Cayce
Clerk

No. 20-10394

Harry Colbert; Carla Taylor,

*Plaintiffs—Appellants*,

*versus*

Wells Fargo Bank, N.A.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-1415

Before Jolly, Stewart, and Oldham, *Circuit Judges*.
Per Curiam:*

Harry Colbert and Carla Taylor ("Plaintiffs") had a home mortgage loan with Wells Fargo. They defaulted on their loan, and Wells Fargo foreclosed on their home and sold it in a non-judicial foreclosure sale. They filed suit against Wells Fargo, asserting Texas Debt Collection Act claims, tort claims, and breach of contract claims. The district court dismissed all

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

claims under Federal Rule of Civil Procedure 12(b)(6). We AFFIRM IN PART and REVERSE AND REMAND IN PART.

## I. FACTS AND PROCEDURAL HISTORY

In December 2008, Plaintiffs purchased a home in Duncanville, Texas. They took out a mortgage on the home, which Wells Fargo serviced and eventually purchased. They made regular payments on the loan for several years until Taylor became sick with cancer and they fell behind.

In May 2018, Wells Fargo sent Plaintiffs a notice of default and notice of intent to accelerate. They responded by making several payments on their account. In September 2018, Wells Fargo sent Plaintiffs an account statement explaining that the bank "ha[d] not made the first notice of filing required by applicable law for the foreclosure process." Wells Fargo sent similar notices through December 2018, all representing that their loan was not yet in foreclosure.

On January 11, 2019, Wells Fargo sent Plaintiffs a notice of acceleration. On January 16, 2019, Wells Fargo sent Plaintiffs an account statement indicating that it would accept payment for less than the full balance of the loan and noting that a failure to pay could result in acceleration of the loan. Wells Fargo foreclosed on their loan shortly thereafter.

As of January 16, 2019, Plaintiffs owed Wells Fargo $152,486.63. Wells Fargo sold Plaintiffs' home for $155,000, more than the amount Plaintiffs owed. Wells Fargo did not give Plaintiffs the surplus money or explain if Plaintiffs owed any additional fees.

Plaintiffs sued Wells Fargo asserting various causes of action under the Texas Debt Collection Act and Texas common law. Wells Fargo moved to dismiss all claims under Rule 12(b)(6). The district court granted the

No. 20-10394

motion to dismiss. The court also quashed Plaintiffs' request to subpoena a Wells Fargo employee. This appeal follows.

## II. STANDARD OF REVIEW

This court reviews de novo a motion to dismiss for failure to state a claim under Rule 12(b)(6). *In re Katrina Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). In considering a motion to dismiss, courts accept facts as true but not legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

## III. DISCUSSION

Plaintiffs appeal the district court's dismissal of the following claims: misrepresentation under TDCA section 392.304(a)(8); false representation under TDCA section 392.304(a)(19); improper fee collection under TDCA section 392.303(a)(2); breach of contract; negligent misrepresentation; negligence; and fraud. Plaintiffs also appeal the district court's order quashing their subpoena of a Wells Fargo employee.

1. *Misrepresentation and False Representation under TDCA sections 392.304(a)(8) and 392.304(a)(19)*

Plaintiffs argue that Wells Fargo's monthly statements from May to December 2018 indicated that their home was not yet in foreclosure. Since that information was false, they argue that Wells Fargo misrepresented information about their loan in violation of the TDCA. They assert the same argument for Wells Fargo's January 2019 statement indicating that their loan was not yet accelerated.[1] They argue that the district court erred in dismissing their complaint based on these allegations. We disagree.

---

[1] Plaintiffs' January 2019 monthly statement said that their loan would be accelerated unless they paid $8,288.26.

"[A] debt collector may not use a fraudulent, deceptive, or misleading representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt." TEX. FIN. CODE § 392.304(a)(8). Debt collectors are also prohibited from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* § 392.304(a)(19).

Wells Fargo's statements about Plaintiffs' foreclosure and acceleration status were confusing, but none of the statements suffice to state a claim under section 392.304(a)(8) because the statements did not lead Plaintiffs "to be unaware (1) that [they] had a mortgage debt, (2) of the specific amount [they] owed, or (3) that [they] had defaulted." *Rucker v. Bank of America, N.A.*, 806 F.3d 828, 832 (5th Cir. 2015). Though Wells Fargo's January 2019 statement requested payment for less than the full balance of Plaintiffs' loan, Plaintiffs were not misled as to the overall balance they owed Wells Fargo.

Plaintiffs also fail to state a claim under Texas Financial Code section 392.304(a)(19). They marshal the same facts as above, arguing that even if Wells Fargo's statements are not included under section 392.304(a)(8), the statements are actionable as false representations under section 392.304(a)(19). However, misrepresentations that are actionable under the TDCA must be affirmative statements that are false or misleading. *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014). Plaintiffs' claim for misrepresentation under section 392.304(a)(19) hinges on a sentence in their January 2019 statement that reads "[f]ailure to bring your loan current may result in fees, the acceleration of your repayment terms (or request for repayment of your balance in full), or the possibility of loss of your home through foreclosure." This sentence falls short of being an affirmative statement that their home was not foreclosed and that their debt was not

accelerated.[2] Statements that create misrepresentations only through inference or deduction are not affirmative misstatements. *See Chavez*, 578 F. App'x at 348 (dismissing claim under section 392.304(a)(19) based on statement from which the plaintiff could infer that he was qualified for loan modification). A statement about Wells Fargo's possible future actions regarding Plaintiffs' loan is not an affirmative representation about the current state of the loan, even though Plaintiffs could infer information from the statement.

We therefore affirm the district court's dismissal of Plaintiffs' claims under Texas Financial Code section 392.304(a)(8) and section 392.304(a)(19).

### 2. *Improper Fees under TDCA section 392.303(a)(2)*

Plaintiffs next argue that the district court erred in dismissing their claim under Texas Financial Code section 392.303(a)(2). Wells Fargo sold Plaintiffs' home and appears to have received more money from the sale than was owed by Plaintiffs. Wells Fargo did not turn over any excess funds nor explain what additional fees Plaintiffs owed. We disagree with the district court's dismissal of Plaintiffs' claim at this stage.

"In debt collection, a debt collector may not use unfair or unconscionable means . . . [including] collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless expressly authorized by the agreement creating the obligation." TEX. FIN. CODE § 392.303(a)(2).

---

[2] The same statement told Plaintiffs that Wells Fargo had made the first filing in the foreclosure process.

No. 20-10394

When Wells Fargo sold Plaintiffs' home, it received $155,000 at the foreclosure sale. According to the January 2019 statement, Plaintiffs owed Wells Fargo $152,486.63 in unpaid principal balance, unpaid advance balance, repayment of escrow, unpaid late charges, and unpaid interest. If the foreclosure sale happened on January 16, Wells Fargo would have owed Plaintiffs $2,513.37 from the foreclosure sale.[3] In reality, the foreclosure sale occurred on February 5, 2019. While Plaintiffs may have accrued more debt and fees through February 5, (thereby reducing the amount Wells Fargo owed them from the foreclosure sale), we cannot conclude that Wells Fargo owes Plaintiffs none of the proceeds from the sale. If Plaintiffs were owed even one dollar from the foreclosure sale, Wells Fargo may have violated section 392.303(a)(2) by collecting a charge, fee, or expense not authorized by their agreement.

Wells Fargo's only response is that Plaintiffs' allegations on this claim are conclusory. Given that Plaintiffs' Second Amended Complaint includes their January 2019 statement showing that they owe Wells Fargo less than $155,000, we disagree. Even though the January 2019 statement is an exhibit to the complaint, "a district court [reviewing a motion to dismiss] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation and citation omitted).

We therefore reverse and remand so that the district court can determine if Wells Fargo owes Plaintiffs any money from the foreclosure sale.

---

[3] This amount may be lower if the mortgage contract authorizes Wells Fargo to charge Plaintiffs additional fees related to foreclosure.

### 3. *Breach of Contract Claim*

Plaintiffs' third argument is that the district court erred by dismissing their breach of contract claim. Plaintiffs assert that Wells Fargo breached the mortgage contract by giving improper notice of acceleration before foreclosing on their home or by abandoning its acceleration and then improperly foreclosing on their home. Assuming that improper acceleration is actionable as a breach of contract, we disagree with Plaintiffs' arguments that Wells Fargo's acceleration was improper.

Plaintiffs first assert that Wells Fargo breached the mortgage contract by foreclosing on their home without providing proper notice of acceleration. Under Texas law, a lender may not foreclose on a debt without providing both a notice of intent to accelerate and a notice of acceleration. *See Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982). Even if a lender accelerates a note with a "clear and unequivocal" notice, *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991), acceleration can be abandoned by a party's actions. *Boren v. United States Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015).

Wells Fargo sent Plaintiffs all the required notices before foreclosing on their home. It sent the notice of default and notice of intent to accelerate on May 11, 2018. It sent notices of acceleration and notice of foreclosure sale on January 11, 2019.  It foreclosed on Plaintiffs' home on February 5, 2019.

Plaintiffs argue that the notice was improper because it lacked certain features, including a title and a signature from Wells Fargo. However, the notice clearly stated that it was the notice of acceleration and that Wells Fargo had elected to accelerate Plaintiffs' debt. It was "clear and unequivocal" under *Shumway*, so the notice was proper.

Plaintiffs next argue that Wells Fargo breached the mortgage contract by abandoning acceleration and then foreclosing on their home. Wells Fargo

sent a notice of acceleration on January 11, but it sent a statement requesting payment for less than the full amount of the accelerated loan on January 16. Plaintiffs argue that the January monthly statement abandoned Wells Fargo's right of acceleration because a lender may waive its earlier acceleration by "requesting payment on less than the full amount of the loan." *Boren*, 807 F.3d at 106.

Abandonment is viewed through the lens of traditional principles of waiver. *Id.* at 105. Waiver of a right requires "actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Waiver can be express or implied from "conduct inconsistent with a claim to the right." *G.T. Leach Builders, LLC v. Sapphire V.P, LP*, 458 S.W.3d 502, 511 (Tex. 2015). "Waiver by implication only occurs when conclusive evidence shows the party unequivocally manifests its intention to no longer assert its right." *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F. App'x 253, 256 (5th Cir. 2013); *see also G.H. Bass & Co. v. Dalsan Props.-Abilene*, 885 S.W.2d 572, 577 (Tex. App. —Dallas 1994, no writ) ("[I]t is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party [unequivocally] manifested its intent to no longer assert its claim." (quotation omitted)).

Plaintiffs argue that Wells Fargo's January 2019 monthly statement abandoned acceleration by requesting payment for less than the full amount of the loan. But the request for payment must have demonstrated an "unequivocal manifestation" of Wells Fargo's intent to no longer accelerate the loan. Wells Fargo's request for a lesser amount was a reinstatement amount that Plaintiffs could pay to avoid acceleration, and it did not evidence a clear intent to abandon acceleration. *See Lyons v. Select Portfolio Servicing, Inc.*, 748 F. App'x 610, 611–12 (5th Cir. 2019) (finding that a post-

acceleration notice informing a mortgagor of the amount owed to return a loan to good standing did not manifest intent to abandon acceleration).

Wells Fargo's notice of acceleration was proper, and no subsequent notice manifested intent to abandon acceleration, so we affirm the district court's dismissal of Plaintiffs' breach of contract claim.

### 4. Negligent Misrepresentation Claim

Plaintiffs' fourth argument is that the district court improperly dismissed their claim for negligent misrepresentation. We disagree.

To demonstrate a case of negligent misrepresentation, a plaintiff must plead the following:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Assoc. of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Plaintiffs failed to allege sufficient facts to meet the second prong of a negligent misrepresentation claim, that Wells Fargo supplied false information for guidance in their business. Texas courts require false information to be for guidance in another's business. *See id.* Plaintiffs do not allege such facts, and their argument that negligent misrepresentation claims are permitted between lenders and mortgagors is inapposite. We therefore affirm the district court's dismissal of Plaintiffs' negligent misrepresentation claim.

No. 20-10394

*5. Negligence Claim*

Plaintiffs' fifth argument is that the district court erred by dismissing their negligence claim on the ground that it was barred by the economic loss rule. We disagree.

Plaintiffs asserted a negligence claim based on Wells Fargo's alleged duties to correct its misleading statements about their loan and to use reasonable care when providing information to them. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp.2d 747, 763 (N.D. Tex. 2012) (duty to correct prior misleading statements); *Sloane*, 825 S.W.2d at 442 (duty to use reasonable care in providing information).

Even if we assume that Wells Fargo owed Plaintiffs these duties and breached them, Plaintiffs' claims are still unsuccessful because they are barred by the economic loss rule. The economic loss rule "precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties." *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016). To determine whether the economic loss rule bars a tort claim, courts look to "the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." *Id.* (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996)).

First, we consider the nature of the remedy Plaintiffs seek. Plaintiffs' Second Amended Complaint requests damages for the loss of their home equity, moving expenses, storage expenses, and mental anguish. Mental anguish damages are not recoverable in contract law, but merely pleading non-economic damages is generally insufficient to avoid the economic loss rule. *See Johnson v. Wells Fargo Bank, N.A.*, 999 F.Supp.2d 919, 931 (N.D. Tex. 2014) ("Plaintiff alleges emotional distress and mental anguish damages for her negligence claim. But, in the absence of any pleaded special

relationship with Defendants or other extraordinary circumstances, Plaintiff has not pleaded a plausible basis to recover emotional distress or mental anguish damages."). Instead, the analysis turns on whether Plaintiffs have alleged a basis to recover non-economic damages independent of the contract. *Id.*

We next consider the source of Wells Fargo's alleged duties to determine whether Plaintiffs have a non-contractual basis for seeking non-economic damages. The source of any duty owed by Wells Fargo is its mortgage contract with Plaintiffs. The duty to correct misleading statements and duty to use reasonable care in communicating information are directly related to the contract. These duties do not arise from a separate common-law duty and "would [not] give rise to liability independent of the fact that a contract exists between the parties." *Sw. Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

Plaintiffs rely on *Shellnut v. Wells Fargo Bank, N.A.*, for the proposition that the economic loss rule does not prevent borrowers from recovering mental anguish damages from lenders. 2017 WL 1538166 at *12 (Tex. App.—Fort Worth Apr. 27, 2017, pet. denied). In *Shellnut*, the Texas Court of Appeals at Fort Worth reversed a grant of summary judgment in favor of the borrower, rejecting the trial court's application of the economic loss rule to the borrower's fraud and negligent misrepresentation claims. *Id.* But *Shellnut* too requires the alleged tort to be "independent of the contractual undertaking" to avoid the economic loss rule. *Id.* at *11.

Plaintiffs' claims are not independent of the contract and no separate common-law duty exists as a basis for their negligence claim and pursuit of non-economic damages. We therefore affirm the district court's dismissal of Plaintiffs' negligence claim.

No. 20-10394

### 6. Fraud Claim

Plaintiffs' sixth argument is that the district court erred in dismissing their fraud claim. We disagree.

The district court dismissed Plaintiffs' fraud claim under Rule 12(b)(6), concluding that they failed to plead fraud with particularity as required by Rule 9(b). In Texas fraud cases, plaintiffs must plead that:

> (1) the defendant made a material representation, (2) the representation was false, (3) the speaker knew the representation was false or made it with reckless disregard for its truth, (4) the speaker made the representation with the intent to defraud, (5) the plaintiff relied on the representation, and (6) the reliance caused the plaintiff an injury.

*Hall v. Douglas*, 380 S.W.3d 860, 870 (Tex. App.—Dallas 2012, no pet.).

Plaintiffs failed to sufficiently allege that Wells Fargo made any material representations or that the representations were made with the intent to defraud. We therefore affirm the district court's dismissal of Plaintiffs' fraud claim.

### 7. Quashing Plaintiffs' Subpoena of Wells Fargo Employees

Plaintiffs last argue that the district court erred in quashing a subpoena and preventing Plaintiffs from deposing various Wells Fargo employees. We disagree.

Plaintiffs claim their subpoena and discovery requests were reasonable because they simply sought information from Wells Fargo employees assumed to have knowledge about their mortgage. But Plaintiffs' justification for the subpoena and the discovery requests is speculative at best. And given the district court's broad discretion over discovery matters, we affirm its reasonable order denying Plaintiffs' request.

No. 20-10394

## IV. CONCLUSION

For all of these reasons, we AFFIRM the district court's dismissal of Plaintiffs' claims under TDCA sections 392.304(a)(8) and 392.304(a)(19). We also AFFIRM the dismissal of their breach of contract, negligent misrepresentation, negligence, and fraud claims. We AFFIRM the district court's discovery order. We REVERSE and REMAND the dismissal of Plaintiffs' TDCA section 392.303(a)(2) claim.