705 So.2d 51 (1997)
Dorinda POL, Appellant,
v.
Guillermo POL, Appellee.
No. 97-201.
District Court of Appeal of Florida, Third District.
December 24, 1997.
Rehearing Denied February 25, 1998.
*52 Jorden Burt Berenson & Johnson, and Raul A. Cuervo, and Farrokh Jhabvala, and Ronald J. Pabis, Miami, for appellant.
Buchbinder & Elegant, and Ira M. Elegant, Miami; Rosen & Switkes, and Harold Rosen, Miami Beach, for appellee.
Before GERSTEN, FLETCHER and SHEVIN, JJ.
PER CURIAM.
Appellant, Dorinda Pol ("Dorinda"), appeals the disbursement of proceeds from a condemnation award to her former husband, appellee, Guillermo Pol ("Guillermo"). We reverse, finding that the forced sale was a transfer of property for which Dorinda was contractually entitled to receive a share of the proceeds.
Dorinda and Guillermo purchased the Anchor Hotel on Miami Beach during their marriage. Upon the dissolution of the marriage, this property reverted to a tenancy in common. Dorinda then moved to partition the property and equitably divide the assets. Immediately thereafter, Guillermo offered to buy Dorinda's interest in the property. In exchange, Guillermo promised Dorinda that she would receive 50% of the profits if he sold or transferred ownership in the hotel, as long as the sale took place within five years and involved more than $650,000. This agreement was memorialized in a letter of intent that Guillermo signed.
In June of 1996, the Miami Beach Redevelopment Authority ("MBRA") commenced a condemnation proceeding against the property and named Dorinda and Guillermo as defendants. Dorinda cross claimed against Guillermo seeking a declaratory judgment that the condemnation was a sale or transfer under the agreement for which she was contractually entitled to a share of the proceeds. Alternatively, Dorinda sought a rescission of the agreement and an equitable lien on the apportionment.
Guillermo independently settled with MBRA for $1.6 million and moved for summary judgment on Dorinda's claims. The trial court granted partial summary judgment, finding that the condemnation was not a "sale, transfer or conveyance" under the agreement, because Guillermo was not a "willing seller." The trial court then released the funds from the condemnation *53 award to Guillermo. Dorinda's claim for equitable relief and rescission remain pending below. Dorinda now appeals.
It is well established that a court cannot rewrite the clear and unambiguous terms of a voluntary contract. See Nat'l Health Lab., Inc. v. Bailmar, Inc., 444 So.2d 1078 (Fla. 3d DCA), review denied, 453 So.2d 43 (Fla.1984); Int'l Expositions, Inc. v. City of Miami Beach, 274 So.2d 29 (Fla. 3d DCA 1973); All-Dixie Ins. Agency, Inc. v. Moffatt, 212 So.2d 347 (Fla. 3d DCA 1968). Instead, the plain meaning of the actual language used by the parties controls. See Maher v. Schumacher, 605 So.2d 481 (Fla. 3d DCA 1992); Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, 541 So.2d 738 (Fla. 3d DCA), review denied, 548 So.2d 662 (Fla.1989).
Here, Guillermo agreed that Dorinda would receive 50% of the profits realized from any "transfer" or "sale" of the property. The plain meaning of the term "transfer" does not mandate a voluntary transaction. Transfers encompass all means of disposing of property, including involuntary transfers by operation of law. See Black's Law Dictionary 1497 (6th ed.1990).
Similarly, the plain meaning of the term "sale" does not require a voluntary transaction. A "sale" is interpreted to include any conveyance of property for consideration, including forced sales in condemnation proceedings. See Allstate Mortg. Corp. of Florida v. Strasser, 286 So.2d 201 (Fla. 1973), superseded by statute on other grounds as stated in Emanuel v. Bankers Trust Co., N.A., 655 So.2d 247 (Fla. 3d DCA), review denied, 663 So.2d 629 (Fla.1995); Langston v. City of Miami Beach, 242 So.2d 481 (Fla. 3d DCA 1971). Therefore, the plain, unambiguous terms of the agreement clearly encompass involuntary transactions such as condemnation proceedings.
Since there was no specific requirement that the transaction be voluntary, the trial court erred by misinterpreting the plain meaning of the agreement's terms as requiring a willing seller. See Nat'l Health Lab. Inc., 444 So.2d at 1080. Dorinda was contractually entitled to 50% of the profits because the condemnation sale took place within five years of the agreement and involved more than $650,000. Accordingly, we reverse the order and remand for further proceedings consistent with the terms of the agreement.
Reversed and remanded.