# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-2573
LT Case No. 2017-CA-000003

_____

KENT WALTER MILLER and
JUDITH A. MILLER,

 Appellants,

 v.

ARCPE BAHAMAS, LLC,
Successor in Interest to
CapitalSource International,
LLC f/k/a CapitalSource
International, Inc.,

 Appellees.

_____

On appeal from the Circuit Court for Flagler County.
Kathryn Diane Weston, Judge.

S. Brian Bull, of Scott, Harris, Bryan, Barra & Jorgensen, P.A.,
Palm Beach Gardens, for Appellants.

Nancy M. Wallace & Kristen M. Fiore, of Akerman, LLP,
Tallahassee, and Christian P. George, David Otero, and Adam C.
Remillard, of Akerman, LLP, Jacksonville, for Appellee.

November 14, 2025

KILBANE, J.

 This appeal relates to a series of cases stemming from a failed
luxury development in the Bahamas. After successfully enforcing
promissory notes used to purchase lots in the proposed resort

community, the trial court awarded attorneys' fees to the note holder. Because the notes provided for fees only if the debt was accelerated, we reverse.

## Facts

Kent and Judith Miller ("Millers") executed promissory notes[1] to buy undeveloped lots at a proposed community titled "Ginn Sur Mer" on Grand Bahama Island. The notes required monthly interest-only payments followed by a balloon payment due by a specified maturity date. Upon default, the notes provided the option to accelerate the total debt.

In May 2010, the Millers ceased making payments on both notes. On May 6, 2011, the note holder sent the Millers notices ("Default Notices") informing them of their default and its express intent to accelerate the full amount due on each note if default was not cured within thirty days. The Millers made no further payments. The notes matured as of January 1, 2012, and May 1, 2012, respectively.

More than five years after the Default Notices were sent but less than five years after each note's maturity date, the note holder[2] filed suit to collect sums due under the notes.[3] While litigation was pending, ARCPE Bahamas LLC ("ARCPE") purchased the Millers' notes, along with other similarly situated borrowers. Significant issues were resolved for ARCPE via summary judgment, including the statute of limitations defense based on the assertion that the Default Notices accelerated the debt. The trial court concluded suit was not time barred because

---

1. Kent Miller executed the first note individually on December 22, 2006, and the Millers executed the second note jointly on March 23, 2007.

2. CapitalSource International LLC was the successor in interest to the original lender.

3. The note holder filed to enforce Mr. Miller's note on December 30, 2016, and the Millers' note on April 28, 2017. These cases were later consolidated below.

it was filed within five years of each note's maturity date and the Default Notices did not accelerate the debt.

The trial court entered final judgment for ARCPE with a finding that it was entitled to attorneys' fees. Upon ARCPE's motion, the trial entered final judgment awarding $168,246.39 in attorneys' fees and costs.[4] The Millers timely appeal.

### Merits

We review entitlement to attorney's fees provided by contract de novo. *Wells Fargo Bank Nat'l Ass'n for Morgan Stanley ABS Cap., MSAC 2007-HE3 v. Bird*, 234 So. 3d 833, 834 (Fla. 5th DCA 2018).

Florida "follows the 'American Rule' that attorney's fees may only be awarded by a court pursuant to an entitling statute or an agreement of the parties." *Air Turbine Tech., Inc. v. Quarles & Brady, LLC*, 165 So. 3d 816, 821 (Fla. 4th DCA 2015) (quoting *Dade County v. Peña*, 664 So. 2d 959, 960 (Fla. 1995)). "In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Pesantes v. Kelley*, 406 So. 3d 340, 344 (Fla. 3d DCA 2025) (quoting *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla. 3d DCA 1989)).

In Section 3(A) of the Millers' notes, they agreed to make monthly payments and ensure the total amount due was paid by a specified date:

### 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest only by making a payment every month.

---

4. The Millers concede that ARCPE was entitled to taxable costs in the amount of $969.47.

3

> I will make my monthly payment on the first day of each month beginning on [specified date]. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on [specified date], I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

But if instead the Millers defaulted on their monthly payments, the note holder could pursue acceleration of the debt under section 7 of the notes:

> **7. BORROWER'S FAILURE TO PAY AS REQUIRED**
>
> . . . .
>
> **(B) Default**
>
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
>
> **(C) Notice of Default**
>
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
>
> . . . .
>
> **(E) Payment of Note Holder's Costs and Expenses**

4

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, attorneys' fees.[5]

The fee provision in section 7(E) is inapplicable here. The plain language of the notes provide that if the borrower failed to make a monthly payment, the note holder could send written notice of its intention to accelerate the debt unless default was cured. If default was not cured within thirty days, the note holder *may* require the borrower to pay the full debt "immediately." Although the note holder sent the Default Notices—a prerequisite to acceleration—they did not actually accelerate the debt and require *immediate* payment of the total due. While the total debt could have been rendered immediately due and payable, the note holder did not take steps to *require* the borrower to pay the debt by filing litigation or otherwise pursuing the accelerated debt. Instead, years later, a successor note holder filed suit for the total sum due based on the Millers' failure to pay the debt *as of the maturity date*. Likewise, the trial court granted final summary judgment based on a finding that the Millers breached each note by failing to pay the debts "on or before its maturity date."

ARCPE relies on section 3(A) of the note in claiming it required the Millers to pay in full. But section 3(A) merely explains the specified time and place of payments agreed to in advance by the parties. This is distinguishable from section 7, which requires *immediate* payment in full based on uncured default. This understanding is supported by the structure of the notes, where subsections (C), (D), and (E) use nearly identical language located within section 7:

---

5. Section 7(E) is the only provision that references attorneys' fees.

5

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder *may require me to pay immediately* the full amount of Principal which has not been paid and all interest that I owe on that amount. . . .

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not *require me to pay immediately in full as described above*, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has *required me to pay immediately in full as described above*, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.

(emphasis added).[6]

ARCPE also asserts section 7(D) supports its entitlement to fees because it did not waive its right to accelerate the debt.  But ARCPE prevailed both below and on appeal on its argument that

---

6.  In the answer brief, ARCPE argues section 7(E)'s language that "the Note Holder has required me to pay immediately in full *as described above*," should include section 3(A), "which clearly is above paragraph 7(E)."  While section 3(A) is literally above section 7(E) in the document, this argument belies the language and structure itself and is unpersuasive.

it did *not* accelerate the debt.[7]  Had the note holder accelerated the debt based on the Millers' continuing default,[8] this provision would have supported its entitlement to fees.  But instead ARCPE sought to enforce the notes based on the Millers' failure to pay the unaccelerated debts as of the notes' maturity dates.  ARCPE is therefore judicially estopped from basing its entitlement to attorneys' fees on the inconsistent position that it did accelerate.  *See Dora v. Morrison as Co-Tr. of Mary Rose & Douglas Morrison Family Tr., u/a/d 10/05/2007*, 384 So. 3d 290, 294 (Fla. 5th DCA 2024) ("Judicial estoppel provides that one who [successfully] assumes a particular position or theory in a case is judicially estopped in a later phase of that same case, or in another case, from asserting any other or inconsistent position toward the same parties and subject matter." (internal quotation marks and alterations omitted) (quoting *Whittingham v. HSBC Bank USA,*

---

7.  Despite successfully arguing the Default Notices did not accelerate the debts such that the claim would be barred by the statute of limitations, ARCPE inconsistently asserted it *did* accelerate the debts when it asserted entitlement to money damages in its motion for final summary judgment:

> On May 6, 2011, without any obligation to do so, the then-Note holder issued demand letters . . . to Defendants demanding payment of all amounts due under the Note. . . .  Defendants further defaulted under the terms of the Note by failing to pay all amounts owed thereunder on or before the expiration of the thirty-day deadline specified in the [Default Notices], *rendering all amounts owed under the Notes immediately due and payable.*

(emphasis added).  ARCPE included: "To the extent necessary, ARCPE hereby demands immediate payment of all amounts due under the Note."

8.  Under the terms of the notes, default is based on the failure to make *monthly* payments, not failure to pay by the maturity dates.

7

*NA as Tr. for Holders of Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2007-OA1*, 275 So. 3d 850, 852 (Fla. 5th DCA 2019))).

Because ARCPE was not entitled to fees under the notes, we reverse the fee and cost judgment and remand with instructions to strike the award of attorneys' fees.

REVERSED and REMANDED with instructions.

EDWARDS and EISNAUGLE, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____